[Sac. No. 4402. In Bank.—August 17, 1931.]

ANNA OCHOA et al., Appellants, v. S. A. McCUSH et al., Respondents.

[Sac. No. 4403. In Bank.—August 17, 1931.]

MARY F. STONE et al., Appellants, v. S. A. McCUSH et al., Respondents.

M. H. Iverson and G. E. Redwine for Appellants.

Lilburn Gibson for Respondents.

PRESTON, J.—Appeal from judgments for defendants in suits to compel the reconveyance of certain real property. The causes of action are identical, are submitted under one set of briefs and will be considered together; the word "appeal" will refer to both appeals.

The real basis of the appeal is the contention that the findings do not support the judgment. The substance of these findings will therefore be set forth:

In 1916 plaintiffs and defendant S. A. McCush became owners, as tenants in common, of an undeveloped tract of land in northern Mendocino County of the reasonable value of $5,000, which they encumbered soon thereafter with a $1700 mortgage. Said defendant was the son of one plaintiff and the brother of the other plaintiffs and they all reposed great and implicit confidence and trust in him. In October, 1917, they executed a deed, intended to convey their respective interests in said property to him. However, by mutual mistake, a portion of the land was omitted from the description in the deed and the court found that it should be corrected to conform to the true intent of the parties.

The deed was delivered to defendant with the understanding and agreement on his part to sell the property, apply the proceeds first to payment of said mortgage and cost of sale and then to payment to each plaintiff of his proportionate share of the residue. The court found that plaintiffs would not have made the deed but for their confidence and trust in said defendant and that the sole and only consideration therefor was his said agreement to sell the property and distribute the proceeds as aforesaid.

Defendant went into possession and did not or could not sell the land. But out of his own funds he paid taxes from the date of the deed to him, aggregating some $900. In addition, he had improvements erected on the land, a house, garage, fences, chicken-house and a woodshed, at a total cost of $2,775. These improvements greatly enhanced the value of the property. The court found that plaintiffs first discovered in 1925 that said defendant did not intend to keep his agreement to sell and they then and there de-

manded that he sell the land and carry out his agreement with them. Also in 1925 said defendant borrowed money from defendant Cobb to discharge the renewal of the mortgage of 1917, with accumulations of interest thereunder and he executed to her a new mortgage in the sum of $2,176, which became and the court found to now be a first lien against the whole of said property.

The court further found that in this cause there were equities in favor of both parties; that while plaintiff's cause was not barred by statutory limitation, equity or laches, yet said defendant had made the above improvements in good faith and was entitled to be reimbursed therefor. The proceeds of the land received by defendant since October 31, 1917, were found sufficient to cover the cost of all other improvements made by him, such as clearing the ground, etc.

On March 8, 1929, the court made an interlocutory order requiring said defendant to reconvey said property, in proportionate shares, to each of the plaintiffs, provided each of said plaintiffs repay to defendant his proportionate share of the sums so expended by said defendant for taxes and improvements, but that in the event of plaintiffs' failure to repay said sums before May 7, 1929, said defendant would not be required to reconvey and plaintiffs would take nothing by their action. On June 14, 1929, no repayment having been made by plaintiffs, the court made another order extending their time to July 20, 1929. No payment having been made by that date, the court thereupon prepared and on July 29, 1929, filed its findings, in substance as above set forth, and concluded as a matter of law that said deed should be reformed to contain a complete description of said land; that said Cobb mortgage is a valid first lien against the property and that plaintiffs take nothing by their action. Judgment was entered accordingly and plaintiffs have appealed.

As above stated, the court found that the sole consideration for execution of said deed was said respondent's agreement to sell the land and distribute the proceeds as aforesaid, which agreement he refused and failed to perform. Appellants claim that these findings establish the status of respondent as an involuntary trustee "through his own fault" of the legal title to the land, thus precluding him

from the assertion of any right to reimbursement for the sums expended by him (secs. 2217, 2273, 2275, Civ. Code); hence they claim that in denying them relief because of their failure to reimburse, the judgment is unsupported by the findings and is contrary to law. These same facts, they contend, show the lack of any equity in respondent sufficient to justify the reformation of said deed. Lastly they claim that, from the facts found, the trial court should have entered a decree establishing a trust in their favor, directing conveyance of the property to them and denying reformation of the deed.

In disposing of these several contentions we may first make the observation that as this is an appeal upon the judgment-roll alone, the findings are conclusively presumed to be supported by the evidence; furthermore, it is also elementary that they are to receive, if possible, such a construction as will uphold rather than defeat the judgment thereon; they are to be liberally construed and, if possible, any ambiguity or inconsistency will be resolved in favor of sustaining the judgment.

We cannot say that these findings establish the status of respondent as an involuntary trustee through his own fault. With the finding that the agreement to sell the land was the sole consideration for appellants' deed to respondent is to be considered the finding that there was a relationship of trust and confidence between the parties; that respondent made said improvements in good faith and was entitled to reimbursement for them and for taxes paid. It is also to be considered that the court specifically found that there were equities in favor of both parties. The land appears to have been an undeveloped tract in a remote portion of the state. The evidence is not before us. It is significant that no period was specified within which the sale must be made. Had respondent made every effort to sell over a long period of time and to fulfill the terms of his agreement but had he been unable to find a buyer, it would not be said that he acted in bad faith in entering upon the land to hold and protect it, securing renewals of the mortgage and paying taxes, interest, etc., out of his own funds, meanwhile improving the property to enhance its value.

Even though respondent held legal title to the tract merely for purposes of sale thereof, the equitable title to

undivided shares remaining at all times in appellants, yet he and appellants were tenants in common and he held in his own right both the legal and equitable title to his undivided share of said property. He therefore had the right to enter upon and occupy the whole and every part of the common lands, being presumed, so long as he remained in possession, to hold for himself and for his cotenants. (*Wood* v. *Henley,* 88 Cal. App. 441, 452, 453 [263 Pac. 870], and cases cited.) He was entitled to deduct from the rents or profits received the cost of all proper expenditures made in working the property and developing it and protecting the common estate. (*Higgins* v. *Eva,* 204 Cal. 231, 238 [267 Pac. 1081].)

Thus the circumstances of this case show plainly that there were equities in favor of both parties, as found by the court. From the fact that appellants permitted respondent to hold the property without protest from 1917 to 1925, the presumption on his part would not be unwarranted that they were satisfied to be relieved of the burden of the mortgage and taxes and he may have believed in all sincerity that his right had ripened into legal title. ■ At any rate, in allowing said respondent to hold, improve and increase the value of their property over a period of eleven years, without so much as raising a voice in protest or entering a court of equity to demand a reconveyaance, appellants obviously induced a situation demanding the application of equitable principles and requiring that they do equity by reimbursing respondent, before seeking equity by demanding a reconveyance from him. (3 Pomeroy's Equity Jurisprudence, 4th ed., sec. 1241, and cases cited.)

■ Notwithstanding our approval in the main of the action of the court below, we are unable to follow it as to the form of its judgment in these causes. The interlocutory order made was in reality a final decree disposing of a part of the main issue in the cause (*Pista* v. *Resetar,* 205 Cal. 198, 200 [270 Pac. 453]). To make compliance with this judgment a condition precedent to granting appellants the relief to which they are otherwise found to be entitled unduly prejudiced them. Such a decree only should be framed as will enable an aggrieved party to prosecute, without hindrance, a review of all adverse provisions thereof. Under the present decree appellants must first submit to the judgment respecting compensation for taxes and improvements

before they may have the title restored to them. If they had submitted to such a requirement by discharging the claims, they would have thereby waived and foregone the right to complain of the justice of such an exaction. The decree, of course, could have provided that said respondent was under no obligation to reconvey until the claims were paid, but the time of payment could only have followed the point of time when the decree should become final.

It is also worthy of mention that the regularity of the record title to said property would be best preserved by the decreeing of a lien upon the respective interests in favor of said respondent for the several amounts due and the directing of reconveyances subject thereto.

At any rate a retrial of these causes seems unnecessary.

The judgments are therefore reversed and the causes are remanded to the court below, with instructions to enter final judgments therein not inconsistent with these views.

Seawell, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.