[Civ. No. 593.  First Appellate District.—May 21, 1909.]

L. A. ROCKWELL, Respondent, v. ITALIAN-SWISS COL-
ONY, a Corporation, and A. C. PALLADINE, Appel-
lants.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—FACTS KNOWN AT TRIAL—
COMPLAINT — OPPORTUNITY TO PRODUCE EVIDENCE — ABSENCE OF
DILIGENCE—DISCRETION.—Notwithstanding newly discovered evi-
dence, presented as a ground for a new trial, appears to be such
as, if produced at the trial, would raise a strong presumption that
the result would be different, yet where it appears that the mov-
ing party knew the facts before the trial, and might have proved
them thereat with the exercise of reasonable diligence, that the
complaint gave notice of plaintiff's position, and of the proof
required to meet it, that defendants asked for no continuance, and
had an opportunity after the trial, for three months before the
decision, to move for a resubmission of the cause for further evi-
dence, it cannot be said that defendants exercised due diligence, or
that the court abused its discretion in denying the motion.

ID.—BURDEN UPON MOVING PARTY.—The moving party must show due
diligence, and the action of the trial court will not be disturbed, ex-
cept upon a clear showing of an abuse of discretion.

ID.—DATE OF AFFIDAVITS—REMEDY BY MOTION FOR RESUBMISSION.—
Where all of the affidavits produced upon the motion, save that
of the plaintiff and one other, were made during the month pre-
ceding the decision of the cause, the defendant had the remedy to
move to open the resubmission of the cause for further evidence,
which, if granted, would have given an opportunity to produce
all of the evidence disclosed in any of the affidavits.

APPEAL from an order of the Superior Court of Fresno
County denying a new trial.  Geo. E. Church, Judge.

The facts are stated in the opinion of the court.

George B. Graham, for Appellants.

Everts & Ewing, for Respondent.

HALL, J.—This is an appeal from an order denying de-
fendant's motion for a new trial.

The only ground relied on for a new trial was that of newly
discovered evidence, and appellant concedes that "There is

no question before the court on this appeal other than the ruling of the court in denying defendant's motion for a new trial upon the ground of newly discovered evidence."

The defendant A. C. Palladine is the superintendent of the Italian-Swiss colony, and entered into a written contract February 24, 1903, with plaintiff, in which plaintiff agreed to bore a well that would furnish three thousand five hundred gallons of water per minute for defendant, for the sum of $550, or, in case it became necessary to bore a second well to get the water required, plaintiff was also to receive the cost of the pipe for the second well. It was expressly stipulated that Rockwell must furnish a supply of three thousand five hundred gallons per minute before he should be entitled to any compensation.

Plaintiff under the written contract sunk a well to a depth of one hundred and forty feet, when, in attempting to force down the casing, it collapsed, and the well was rendered useless.

Plaintiff sunk a second well, defendant Palladine paying for the casing, to a depth of one hundred and seventy-five feet. This well does not and cannot furnish three thousand five hundred gallons of water per minute, but only about twelve hundred and fifty gallons per minute. Defendant has used it ever since it was sunk. Palladine testified that "I have used the well for irrigation purposes for the last three years, but the ditches on my place will not carry the water that the well pumps."

Defendant has never paid anything for the wells, except to furnish the pipe for the second well, taking the position that as the wells do not and cannot furnish the stipulated three thousand five hundred gallons of water per minute nothing is owing under the written contract.

Plaintiff brought his action upon a *quantum meruit* for boring the two wells, and recovered judgment for $487.52, which the evidence showed to be the usual and reasonable price for boring such a well one hundred and seventy-five feet deep when the owner furnishes the pipe.

In support of his complaint plaintiff testified that upon the collapse of the first well at about 4:30 P. M. of a given day he left the premises where the well was sunk, but was soon overtaken by one Frank Enos Silva, who had been sent after

him by Palladine.   Palladine came up, and they entered into
an oral agreement for the boring of a second well, by which
Palladine agreed to furnish the pipe and to pay the usual
price for boring the well.   The effect of his evidence was
that the original written contract was abandoned, and a new
oral agreement entered into for the boring of a second well.
He testified that Frank Enos Silva, Manuel Brown and Tom
Shields were present when this oral contract was made, and
that the conversation occurred on the road near to the house
of one Friezzel, and about one-half mile from the well.   Frank
Enos Silva testified and corroborated plaintiff.

Manuel Brown was also examined as a witness.   His evi-
dence is set forth in full, but it is so nearly unintelligible
that it throws no light on the issue.

Tom Shields was not produced as a witness at the trial.

Palladine testified, and denied that he had the conversation
relied on by plaintiff, and said that he did not see plaintiff
after he left the premises until next morning, when he saw
him at the railroad station, when plaintiff agreed that if he,
Palladine, would advance the money for the pipe for a new
well he would go on with the contract.

Defendants introduced other evidence, and the case was sub-
mitted for decision.   The trial was held on the fourteenth
day of March, 1906, and the findings and conclusions of law
filed June 20, 1906.

Upon his motion for a new trial Palladine presented the
affidavits of eight persons besides his own, one being that of
Tom Shields, and several being of persons who were on the
premises when the well collapsed.   Some were employees of
defendants, and all seem to have been known to him.   The
affidavits of several of these witnesses tended to prove that
Palladine remained on the premises where the well was sunk
after plaintiff left, and when he left he went to his home, on
premises other than where the well was sunk, and was accom-
panied by several of the affiants until after he had passed the
house of Friezzel and the point where plaintiff claimed to
have made the new contract with defendant, and did not on
that occasion meet and talk with plaintiff.

It may be, and we think must be conceded, that the new
evidence set forth in the affidavits is of such character as to
raise a strong presumption that if it had been produced at

the trial the decision of the court would have been against the contention of plaintiff. But the court is not required to grant a new trial upon the ground of newly discovered evidence, unless the evidence could not have been discovered and produced by the moving party at the trial by the exercise of reasonable diligence. (Code Civ. Proc., sec. 657, subd. 4.) Due diligence must be shown, and the action of the trial court will not be reversed except upon a clear showing of an abuse of discretion in the ruling. (*O'Rourke* v. *Vennekal,* 104 Cal. 254, [37 Pac. 930]; *Oberlander* v. *Fixen Co.,* 129 Cal. 690, [62 Pac. 254]; *People* v. *Buckley,* 143 Cal. 375, [77 Pac. 169]; *Tibbet* v. *Sue,* 125 Cal. 544, [58 Pac. 160]; *Harralson* v. *Barrett,* 99 Cal. 607, [34 Pac. 342]; *Heintz* v. *Cooper,* 104 Cal. 668, [38 Pac. 511].)

The evidence set forth in the affidavits which is of importance is of facts that ought to have been known to Palladine and were known to him at the time of the trial, except that at the time he may not have remembered them. The evidence related mainly to his whereabouts immediately after the collapse and up to the time that he went to his own home, and the witnesses were all well known to him. His excuse is that he did not know until plaintiff testified what evidence he would be required to meet, and that at the trial it did not occur to him that he had been in the company of several persons, some of his own employees, on the afternoon in question, until after he had passed the Friezzel house on his way home. While he may not have known the exact facts upon which plaintiff relied until plaintiff gave his testimony, the complaint itself gave notice that plaintiff did not rely on performance of the written contract. Indeed, the cross-examination of Silva discloses that Palladine had reason to believe long before the trial that plaintiff expected to prove that a new agreement had been made. Under such circumstances defendant, by taking plaintiff's deposition, might have fully informed himself as to the particulars of plaintiff's claim. When plaintiff testified that Tom Shields was present when the new agreement was made he should have taken steps to procure his testimony. In a similar case it was said: "That defendant did not know what the new witness would testify is no excuse. He had been notified by plaintiff's testimony that these witnesses knew the truth of the matters as to which

plaintiff had testified, and would contradict him if his testimony was false." (*Weinburg* v. *Somps* (Cal.), 33 Pac. 341.)

When plaintiff gave his testimony as to the conversation on the highway near Friezzel's, defendant, if taken by surprise, should have asked for a continuance, in order to procure the attendance of Shields, whom he knew, and of his employees and of the others, who knew that he did not meet plaintiff on the highway near Friezzel's home. Palladine knew what these witnesses knew, and his only excuse for not procuring their attendance is lapse of memory at the time of the trial as to his movements that afternoon. But the record before us shows that the trial occurred March 14, 1906, and the decision was not filed until June 20, 1906. At any time prior to the decision defendant might have moved for the setting aside of the submission, and leave to introduce newly discovered evidence. Just when he remembered the particulars as to his whereabouts, and whom he was with, on the afternoon and evening in question, does not appear, except that all of the affidavits save his own and one other were made during the month of May, 1906. Upon the record before us all this evidence might have been offered before the cause was decided.

Upon the whole case we cannot say that the court abused its discretion in denying defendants' motion for a new trial, for lack of diligence in discovering and producing the newly discovered evidence, and for this reason the order is affirmed.

Cooper, P. J., and Kerrigan, J., concurred.