[Civ. No. 7697. Third Dist. Sept. 30, 1950.]

LOTTIE BOWDEN et al., Respondents, v. JENNISON HEATON et al., Appellants.

Marcel E. Cerf, Robinson & Leland for Appellants.

E. S. Mitchell for Respondents.

ADAMS, P. J.—Plaintiffs, Lottie Bowden and Clara Mitchell, about January 31, 1945, filed an action claiming to be owners of some 800 acres of land in Humboldt County, and seeking to quiet their title thereto. Numerous defendants were named, but as the only defendants concerned with this appeal are Jennison Heaton and his wife, Beulah F. Heaton, further reference to the others may be omitted.

The Heatons filed an answer and a cross-complaint setting up ownership of some 600 acres of the property in themselves,

and seeking to quiet title as against plaintiffs. The latter replied to the cross-complaint, and the issues created were tried by the court, sitting without a jury, and resulted in a decree quieting plaintiffs' title on the ground that plaintiffs, under color of title, had taken possession of the property, and by adverse possession for more than the statutory period had acquired an unassailable title as against the Heatons.

The evidence in the case shows that plaintiffs were owners of the property in controversy prior to June 1, 1926, at which time they leased it, with an option to purchase. The lease interest eventually became vested in Benbow Company, a corporation, which company, about June 1, 1926, executed a trust deed to Mercantile Trust Company which did not include the property in controversy, but did include "all executed contracts for the sale and purchase of any other real property covered by this indenture, whether same be a part of the property herein specifically described or such real property as shall hereafter be acquired by the company." On April 16, 1928, plaintiffs, in execution of the option to sell, deeded the property to Benbow Company, taking, in payment therefor, promissory notes to the amount of $16,375, secured by a mortgage on the property conveyed, said mortgage being recorded June 22, 1928. In June, 1933, one Wilson succeeded the original trustee under the trust deed. On September 5, 1933, Wilson executed a deed to F. H. Woll and F. K. Clelland, which included the 800 acres of the property conveyed by plaintiffs to Benbow Company. Woll and Clelland executed to Jennison Heaton, on September 24, 1934, a deed apparently for but 600 acres of the original 800 acres, upon which the Benbow Company had constructed an airport, which deed was recorded August 3, 1936.

On October 10, 1933, payment of the purchase notes executed by Benbow Company not having been made, plaintiffs instituted foreclosure proceedings, naming a large number of defendants. Jennison Heaton was included as "Jennison Heaton, a corporation," and, though Beulah Heaton was not at first named as a defendant, she was thereafter, by an amendment of the complaint allowed by the court, made a defendant, was served with summons September 11, 1936, and defaulted.

A decree of foreclosure of plaintiffs' mortgage was entered December 16, 1936, and the property was sold to plaintiffs on May 22, 1937, at which time a certificate was issued to them.

The property was not redeemed, and on or about May 22, 1938, a deed.was issued to plaintiffs. They took possession of the land when the certificate was issued, and, as found by the trial court, it was thereafter held by them in actual possession, openly and notoriously and under claim of right. They paid all taxes assessed against said property, beginning with back taxes from 1932 on.

It appears from the record that defendants sought in the lower court to have judgment entered on the pleadings because of what they claimed was an admission by plaintiffs that defendants were the owners of the property. This was denied by the court which pointed out that plaintiffs had elsewhere in their pleadings denied defendants' ownership. It was also contended in the lower court that defendants' chain of title was superior to that of plaintiffs because the trust deed carried title to after-acquired property, that plaintiffs' deed to Benbow Corporation brought the property into the trust, and that the purchase-money mortgage executed by the Benbow Company to plaintiffs was secondary and subordinate to the provisions of the trust deed. The trial court ruled to the contrary, citing Civil Code, section 2898; *Hawkins* v. *Harlan*, 68 Cal. 236 [9 P. 108]; 25 American Law Reports 92; 36 American Jurisprudence 810; but it also held that the argument was irrelevant since plaintiffs had established title by adverse possession. The same arguments are made on this appeal, but since the judgment of the court below is based upon adverse possession, only that phase of appellants' asserted ground for reversal need be considered here.

Regarding the finding of the trial court that plaintiffs acquired title by adverse possession, appellants contend that there was a failure of proof on this behalf. However, on appeal the presumptions favor the judgment, and our only province is to determine whether, in its most favorable aspect, there is evidence to support the decision of the trial court.

Elements required to be established to constitute adverse possession, as set forth in 1 California Jurisprudence, section 22, page 522, are that the possession was by actual occupation, open and notorious, and not clandestine; that it was hostile to the title of one claiming to be the true owner; that it was held under claim of title; that it was continuous and uninterrupted for five years prior to the commencement of the action; and that claimant paid all taxes levied or assessed against the land. Also see *Meier* v. *Meier*, 71 Cal.App.2d 502, 505-506 [162 P.2d 950]; *Posey* v. *Bay Point Realty Co.*, 214

Cal. 708, 711-712 [7 P.2d 1020] ; *Lundy* v. *Lakin,* 96 Cal. App.2d 221, 223 [215 P.2d 61].

Here the evidence, we think, brings plaintiffs within these conditions. Their title is based upon the certificate and deed issued in their foreclosure proceeding; they paid all taxes; their possession was continuous and uninterrupted for more than five years; it was by actual occupation, open and notorious, and was hostile to any claims of defendants. Testimony given by Mrs. Bowden was that plaintiffs went into possession on the issuance to her and her daughter of the commissioner's certificate on May 22, 1937, that they then hired a Mr. Metcalf and his wife, who lived on the place, to run the premises, and plaintiffs put some 200 head of sheep on the land to pasture; that from August, 1938, until July, 1942, a Mr. Marshall ran the place for them on a share basis; that they then leased the property to a Mr. James who later conveyed his lease to a Mr. Gamlon, who continued in possession under the lease; that plaintiffs occasionally lived on the place part of the time, as the house was furnished; that the place was posted with signs on all of the gates, including those into the airport; locks were put on gates entering the property, and metal "no trespassing" signs were posted on them; that a portion of the land was leased to and used by the Campfire Girls for five years, for camping purposes, from 1940 on; that their possession has never been questioned by anyone; and that she wrote Heaton about the time of the foreclosure asking him if he would like to pay the balance due on the mortgage and take the property over, but he never replied.

Clara Mitchell corroborated her mother's testimony regarding signs, and locks and chains on the gates. She testified that she took wood from the property; that she never saw a plane on the airport; and that no one ever questioned their right of occupancy of or title to the property.

Defendants did not appear at the trial, but rested their case upon the record title. Their only witness was their attorney who testified that he landed his plane on the airfield in 1941, and that in 1942 he took down a sign near the airport; that in 1939 he posted one reading "Keep out, J. Heaton, owner"; but he gave no testimony of doing so under directions from or by authority of the Heatons, or that in taking the sign from a gate he so acted.

We are satisfied that the evidence adduced by plaintiffs

justifies the conclusion of the trial court, and sufficiently satisfies all necessary requirements to establish title in plaintiffs by adverse possession, even though defendants' contention that their chain of title established title in themselves were conceded—which we hold need not be determined in this action.

The judgment is affirmed.

Peek, J., and Van Dyke, J., concurred.

A petition for a rehearing was denied October 30, 1950, and appellants' petition for a hearing by the Supreme Court was denied November 27, 1950.